IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEROY BRAHM, III,**<br>          **Plaintiff,**<br><br>          v.<br><br>**COUNTY OF CHESTER, WARDEN RONALD PHILLIPS, DEPUTY OCIE MILLER, DEPUTY ROBERTS, DIRECTOR TIM MULROONEY, MAJOR MORGAN TAYLOR AND PRIMECARE MEDICAL INC.,**<br>          **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  23-CV-3848** |

## MEMORANDUM OPINION

Plaintiff Leroy Brahm III, a *pro se* litigant[1] proceeding *in forma pauperis*, was formerly incarcerated as a pre-trial detainee at the Chester County Prison (the "Prison").  He is suing the County of Chester (the "County"), several supervisory employees of the Prison (the "Prison Defendants"),[2] and PrimeCare Medical Inc. ("PrimeCare") under 42 U.S.C. § 1983 for civil rights violations he alleges he suffered while incarcerated at the Prison.

Defendants now move for summary judgment, pursuant to Federal Rule of Civil

---

[1] Brahm filed the operative Complaint as a *pro se* litigant on September 22, 2023, seeking both damages and injunctive relief against all Defendants.  In December of 2023, Anthony DiDonato entered an appearance as counsel for Brahm; in March of 2024, DiDonato assisted him in withdrawing his requests for injunctive relief.  Although DiDonato remained as counsel of record during the period between March and November of 2024, DiDonato did not submit any filings on behalf of his client, and there is no indication that he assisted Brahm in preparing or submitting any of his *pro se* filings.  Indeed, Brahm has proceeded *pro se* at all times relevant to this Opinion—*e.g.*, while writing and filing the operative Complaint, during the discovery period, and while preparing his Motion to Strike Defendants' Motion for Summary Judgment (which is construed as a response in opposition thereto).  Accordingly, Brahm's filings, "however inartfully pleaded," will be construed liberally and "[held] to less stringent standards than formal pleadings drafted by lawyers . . . ."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[2] The Prison Defendants are Warden Ronald Phillips; Deputy Warden Ocie Miller; Deputy Warden Roberts (whose first name is not specified by any party); Director Tim Mulrooney; and, Major Morgan Taylor.

Procedure 56, on Brahm's claims for deliberate indifference to serious medical needs.[3]    For the

reasons that follow, Defendants' Motion will be granted.

### I.    FACTUAL BACKGROUND

Except where otherwise noted, the following facts are not in genuine dispute.[4]

Brahm's claims arise out of his pre-trial incarceration at the Prison.  He  alleges that,

during that time, his constitutional rights were violated by the County, the Prison Defendants,

and PrimeCare, a private medical provider that contracts with the County to provide medical care

to people incarcerated at the Prison.

First and foremost, Brahm brings § 1983 claims against all Defendants in connection with

the medical care he received while incarcerated.  Between December of 2021 and September of

2023, Brahm sought and received dental, urological, and other medical treatment from

PrimeCare, most of which he alleges was inadequate, ineffective, and untimely.  With regard to

dental care, Brahm alleges that PrimeCare (as well as the County and the Prison Defendants)

maintains a "blanket basis policy" whereby dentists are prohibited from providing any dental

---

[3] The Motion was initially filed by PrimeCare, but the County and the Prison Defendants moved for joinder, which motion was granted.  Notably, Defendants' Motion only seeks summary judgment on Brahm's claims for deliberate indifference to serious medical needs; no Defendant has moved for summary judgment on any of Brahm's other claims.

[4] Section V of this Court's Policies and Procedures requires that a party moving for summary judgment under Rule 56 "submit a separate Statement of Undisputed Material Facts containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix in support of all of those facts as to which the moving party contends no genuine issue exists."  In response, the party opposing the motion must "submit a separate Statement of Disputed Material Facts, which incorporates the moving party's Statement of Undisputed Material Facts, stating after each consecutive paragraph whether that party accepts or rejects that each fact as stated by the moving party is undisputed."

Defendants filed a Statement of Undisputed Material Facts in compliance with this policy.  Brahm, however, failed to file a responsive Statement of Disputed Material Facts.  Defendants' Statement will therefore be treated as admitted except insofar as Brahm raises specific factual disputes in his Complaint or his Motion to Strike Defendants' Motion for Summary Judgment.  *See Haines*, 404 U.S. at 520 (describing how pleadings by *pro se* litigants should be "[held] to less stringent standards than formal pleadings drafted by lawyers").

treatment beyond extraction of teeth, and that, pursuant to this policy, PrimeCare refused to permanently fill cavities in his teeth.  As regards urological care, Brahm alleges that PrimeCare ignored his pre-existing diagnosis of a corporeal tear and failed to provide him with appropriate preventative and corrective medical treatments for the complications arising from that diagnosis. Brahm also alleges that PrimeCare failed to vaccinate him against Covid-19 in a timely manner and failed to adequately treat a nose injury he sustained after being assaulted in 2022 by another inmate at the Prison.  Finally, Brahm alleges that PrimeCare violated his right to medical privacy.

In addition to his claims related to medical care, Brahm brings § 1983 claims against the County and the Prison Defendants for retaliation, arguing that these Defendants engaged in a "campaign of retaliation and harassment" against him due to his frequent use of the Prison's internal grievance system, his pursuit of the instant civil action, and the nature of the criminal charges against him; claims for denial of his right to access counsel in connection with his underlying criminal case; and claims for failure to protect him against violence and threatening language wrought by other inmates and correctional officers respectively.

## II.  LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party

opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## III.    DISCUSSION

As an initial matter, Brahm brings § 1983 claims against each Defendant in both their personal and official capacities. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citations omitted). Because the County of Chester is not a person, let alone "a government official," Brahm's claims against the County in its personal capacity shall be dismissed as improper. *Id.*

Likewise, insofar as the Prison Defendants and PrimeCare are being sued in their official capacity—*i.e.*, as agents of the County by whom they are employed or contracted—such claims are really "only another way of pleading an action against" the County. *Id.* And because identical claims have been separately pleaded against the County itself, the official-capacity

claims against the Prison Defendants and PrimeCare shall be dismissed as redundant. *See Eck v. Oley Valley Sch. Dist.*, 2019 WL 3842399, at \*7 (E.D. Pa. Aug. 15, 2019) ("'Because claims against a municipal official in his or her official capacity duplicate claims against the municipality itself, courts dismiss official capacity claims as redundant when a plaintiff brings identical claims against the [municipality] directly.'" (quoting *Riveros-Sanchez v. City of Easton*, 2019 WL 3334663, at \*4 n.2 (E.D. Pa. July 25, 2019))).

With these claims dismissed, what remain are the official-capacity claims against the County and the personal-capacity claims against the Prison Defendants and PrimeCare.

### A. Deliberate Indifference to a Serious Medical Need

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under color of law violated "a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, to maintain a § 1983 action against a local governing entity like the County, a plaintiff must show the "violation resulted from a municipal policy or custom . . . ." *Diaz v. City of Phila.*, 670 F. Supp.3d 174, 181 (E.D. Pa. 2023) (citing *Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)). Here, Brahm argues that the PrimeCare and the Prison Defendants violated his Fourteenth Amendment rights through their deliberate indifference to his serious medical needs—namely, routine dental care, urological treatments, inoculation against Covid-19, and treatment arising from the 2022 assault—and that these violations resulted from a municipal policy or custom of denying appropriate medical treatment.

The government has an "obligation to provide medical care for those it is punishing by incarceration;" accordingly, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."

*Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (internal citations omitted).  The Fourteenth

Amendment extends the same protections—if not more—to pretrial detainees like Brahm.  *See*

*Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017) ("[T]he Due Process Clause of the

Fourteenth Amendment provides pre-trial detainees at least as much protection . . . as the level

guaranteed to prisoners by the Eighth Amendment." (citing *Colburn v. Upper Darby Twp.*, 838

F.2d 663, 668 (3d Cir. 1988))).

　　With that said, not any act of medical malpractice "become[s] a constitutional violation

merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Rather, to succeed on a

§ 1983 claim for deliberate indifference to a medical necessity, Brahm must demonstrate that:

(1) he had an objectively serious medical need; (2) a Defendant was deliberately indifferent to

that need; and, (3) the Defendant's deliberate indifference caused him harm.  *Durham v. Kelley*,

82 F.4th 217, 229 (3d Cir. 2023).  Deliberate indifference is characterized by "obduracy and

wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), and has been likened to the *mens rea*

of recklessness familiar from the criminal law, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In

that respect, in the Third Circuit, "a prison official cannot be found liable under the Eighth

Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or

safety . . . ." *Id.*; *Palakovic*, 854 F.3d 223-24 (applying this standard).

### i.  Dental Care

　　Brahm argues that Defendants "denied or delayed adequate or necessary dental care, *i.e.*,

cavity repair, routine fillings, or any corrective matter for over two years."  He further contends

that PrimeCare or the County maintain a policy (or an unwritten custom) whereby "they limit[]

the available options for dental/medical care on a blanket basis to opt for less efficacious

treatment courses, *i.e.*, 'extraction only' or medicate until release no matter the issue big or

6

small." This policy was made manifest, Brahm alleges, when Martin Zarkoski, DMD, informed

Brahm that he had "in excess of seven minor and severe cavities and cracked teeth" that "if left

untreated would result in extraction as a definite needed solution," but refused to provide the

permanent fillings which Brahm believes would have been appropriate as treatment. Brahm also

cites caselaw suggesting that "extraction only" dental policies can constitute deliberate

indifference for the purposes of a § 1983 claim. *See, e.g., Kiehlmeier-Stratton v. Wexford Health

Sources, Inc.*, 2023 WL 2384142, at *5 (W.D. Pa. Mar. 6, 2023) (collecting cases).

Even assuming that Brahm's dental health constituted a serious medical need, the

summary judgment record does not contain evidence to suggest that any Defendant acted with

deliberate indifference toward that need. Brahm's undisputed medical records demonstrate that

he received numerous dental evaluations and treatments throughout 2022 and 2023, including

tartar removal, medication for tooth pain, and an offer to provide a temporary cavity filling,

which offer Brahm denied. The same records make no mention of the "seven minor and severe

cavities and cracked teeth" from which Brahm alleges he suffered, showing instead that he was

only diagnosed with tartar buildup and decay on three of his teeth. And according to

PrimeCare's expert witness, Dr. Sander White—whose testimony Brahm does not challenge—

the palliative treatments offered to Brahm by PrimeCare's dentist met the appropriate standard of

dental care for pre-trial detainees suffering from non-emergent dental conditions like tooth

decay.

Furthermore, Brahm identifies no written policy, either PrimeCare's or the County's,

which constrains dental treatment to extractions of cavity-afflicted teeth and medication of dental

pain. Indeed, PrimeCare's written dental policy, which Brahm himself adduces, specifically

allows for "routine fillings and extractions" for all patients, as well as "treat[ment] with

analgesics" and "[d]ental prostheses" where medically appropriate.  Nor does Brahm identify

any circumstantial evidence from which a reasonable factfinder could infer that the County or

PrimeCare had an unwritten custom of limiting dental treatment to extraction or medication—

*e.g.*, evidence of other inmates being refused appropriate care other than medication or

extraction.

 "Where a prisoner has received some amount of medical treatment, it is difficult to

establish deliberate indifference, because prison officials are afforded considerable latitude in the

diagnosis and treatment of prisoners."  *Palakovic*, 854 F.3d at 227 (citing *Durmer v. O'Carroll*,

991 F.2d 64, 67 (3d Cir. 1993)); *see also United States ex rel. Walker v. Fayette County*, 599

F.2d 573, 575 n.2 (3d Cir. 1979) ("Where a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

guess medical judgments and to constitutionalize claims which sound in state tort law." (internal

quotations and citation omitted)).  Such is the case here.  Brahm has not provided evidence

sufficient for a reasonable factfinder to infer that any Defendant "[knew] of and disregard[ed] an

excessive risk to inmate health or safety" regarding Brahm's dental care.  *Farmer*, 511 U.S. at

837.  Accordingly, all Defendants are entitled to summary judgment on Brahm's § 1983 claim

for deliberate indifference to his dental needs.

### ii.    *Urological Care*

 Brahm suffers from urological complications related to a corporeal tear (and subsequent

corrective surgery) that he suffered prior to his incarceration.  He alleges that Defendants ignored

this diagnosis, refused to administer appropriate care, falsified medical documents, and

intentionally slow-rolled the acquisition of medical records from urologists he saw pre-

incarceration.  These acts, he argues, constitute a "custom" of withholding appropriate medical

treatment for non-medical reasons.

Brahm's argument, however, is not supported by the summary judgment record.  His

medical records show that, whenever he complained of urological difficulties to prison staff or

PrimeCare employees, his complaints were met with appropriate treatment, which included:

dispensation of prescription and over-the-counter medications; blood tests and urinalyses; an

ultrasound; an order that he be assigned to a bottom bunk bed to avoid straining his injury; and

restrictions on his work placements.  Dr. Grant Phillips, an expert witness for PrimeCare whose

testimony Brahm has not disputed, opined that PrimeCare provided Brahm with "thorough,

conscientious care" that was consistent with PrimeCare's policies and procedures.

Further, Brahm fails to identify any evidence suggesting that PrimeCare falsified any

documents or intentionally delayed the acquisition of his medical records from outside

physicians.  His bare assertions of malfeasance, without any evidence, do not give rise to a

genuine issue of material fact that would preclude summary judgment.  *Chavarriaga v. N.J.*

*Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) ("[T]he party opposing a motion for summary

judgment . . . must point to specific factual evidence showing that there is a genuine dispute on a

material issue requiring resolution at trial." (citing *Celotex*, 477 U.S. at 323-24)).

Considering these undisputed facts, no reasonable jury could conclude that any

Defendant "[knew] of and disregard[ed] an excessive risk to inmate health or safety" with regard

to Brahm's urological care.  *Farmer*, 511 U.S. at 837.  Accordingly, Defendants are entitled to

summary judgment on Brahm's § 1983 claim for deliberate indifference to his urological needs.

### iii.     Other Medical Care

Brahm also alleges that Defendants were deliberately indifferent to his serious medical

needs in failing to timely provide booster vaccinations against Covid-19 and in administering

insufficient medical treatments after he was assaulted by another inmate. About the Covid-19 inoculations, the record shows that Brahm received three Covid-19 booster shots during his incarceration: one on February 9, 2022; another on September 16, 2022; and, a third on August 29, 2023. The record also suggests, and Brahm does not dispute, that these shots were his third, fourth, and fifth doses of the vaccine respectively. In his unrebutted expert report, Dr. Phillips opined that PrimeCare vaccinated Brahm "at the appropriate timing and frequency based on the Centers for Disease Control and Prevention guidelines."

As for the assault, the record shows that Brahm presented to PrimeCare staff with an injury to his nose and resultant pain. PrimeCare staff examined his injury, provided pain medication, and ordered an x-ray to determine whether his nasal bones were fractured; the x-ray revealed they were not. Although Brahm alleges that he continues to suffer abnormal breathing, discomfort, pain, and headaches as a result of the assault—and that he reported these symptoms to PrimeCare—his medical records do not indicate that he made any such notification, and Brahm provides no evidence other than his say-so. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Brahm has not provided any evidence from which a reasonable factfinder could infer that any Defendant was deliberately indifferent to his serious medical needs relating to Covid-19 vaccinations or the 2022 assault. *Farmer*, 511 U.S. at 837. Accordingly, Defendants are entitled to summary judgment on these claims.[5]

---

[5] Brahm also claims that Defendants violated his Fourteenth Amendment right to medical privacy, but he neither alleges any facts nor adduces any evidence explaining how they did so. Brahm does not even assert in his

### B.  Other § 1983 Claims

In addition to his claims related to medical care, Brahm brings, purportedly under §1983, several other claims against the County and the Prison Defendants, alleging retaliation, denial of access to counsel, and failure to protect.  Although Defendants have not moved for summary judgment on these claims, Brahm proceeds *in forma pauperis*, so these claims are subject to *sua sponte* review under 28 U.S.C. § 1915(e)(2)(B)(ii).  Pursuant to that statute, each of Brahm's remaining § 1983 claims will be dismissed without prejudice for failure to state a claim.

A district court "shall dismiss" a complaint filed *in forma pauperis* "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).  "District courts' authority to dismiss claims pursuant to § 1915 continues through summary judgment proceedings: courts may dismiss claims pursuant to § 1915 while simultaneously considering motions for summary judgment relating to other claims or defendants."  *Manuel v. Harry*, 2023 WL 4671351, at *2 (M.D. Pa. July 20, 2023); *cf. Brown v. Sage*, 941 F.3d 655, 657 (3d Cir. 2019) (*en banc*) (explaining that, when evaluating a case pursuant to § 1915, "courts are free to assess the merits of the lawsuit at any time") (internal quotations omitted).  When reviewing complaints to determine if they fail to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e), the applicable standard "is the same as under Federal Rule of Civil Procedure 12(b)(6)."  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying that standard).

Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

---

Complaint "[t]hreadbare recitals of the elements" of this cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, and as explained further below, this claim shall be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  *Id.*  The complaint must be construed

"in the light most favorable to the plaintiff," with the question being "whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  Legal conclusions are

disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those

facts state a "plausible claim for relief."  *Id.* at 210-11.

### i.    *Retaliation*

Brahm charges the County and the Prison Defendants with enacting an unconstitutional

"campaign of retaliation and harassment" against him in reprisal for his use of the prison

grievance system, his pursuit of the instant civil rights lawsuit, and the criminal acts he was

accused of committing at the time of his incarceration at the Prison.  In support, Brahm alleges

that correctional officers: used threatening and coarse language when addressing him; denied

him warm clothing, bedding, and hygiene supplies during his initial intake; placed him on

suicide watch without medical justification; attempted to force fights between inmates, including

by encouraging another inmate to assault him; and trashed his cell and destroyed his property

while he was being held in a separate quarantine unit during the Covid-19 pandemic.[6]

With the exception of Director Tim Mulrooney and Deputy Roberts, Brahm fails to allege

that any Defendants were involved in any capacity in these allegedly retaliatory actions.  "A

---

[6] Brahm argues that this specific action constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Insofar as this argument is understood to raise a distinct § 1983 claim separate from and additional to his retaliation claims, it must too be dismissed without prejudice for the reasons explained below.

defendant in a civil rights action must have personal involvement in the alleged wrongs; liability

cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845

F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Because Brahm fails to allege such personal

involvement, he fails to state a claim for § 1983 retaliation against Warden Ronald Phillips,

Deputy Ocie Miller, or Major Morgan Taylor, and those claims shall be dismissed without

prejudice.

As for the other two Prison Defendants, Brahm recounts an altercation during which

Director Mulrooney was arguing with another inmate concerning the inmate having assisted

Brahm in filing internal prison grievances. Brahm attempted to defend the inmate, and in

response, Director Mulrooney "got louder and obviously more agitated." Brahm later discussed

this altercation with Deputy Roberts, who agreed to issue Brahm a formal statement regarding to

the situation.

"In order to establish illegal retaliation for engaging in protected conduct, [a plaintiff]

must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action

at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or

motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d

Cir. 2016) (citations omitted). Brahm fails to state a claim for retaliation against Director

Mulrooney because his averments about Director Mulrooney's behavior do not describe any

"adverse action" taken against him. *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)

(describing an "adverse action" as an action "sufficient to deter a person of ordinary firmness

from exercising" their constitutional rights (citations and internal quotation marks omitted));

*McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that an adverse action "must be

more than *de minimis*" to support a retaliation claim). Here, interpreted in the light most

favorable to Brahm, his Complaint does not allege that Director Mulrooney took any adverse

action against him: becoming agitated when Brahm intervened in an argument that Mulrooney

was having with another inmate does not constitute an adverse action.  Accordingly, Brahm fails

to state a claim for retaliation against Director Mulrooney, and that claim shall be dismissed

without prejudice.

The same goes for Deputy Roberts, with whom Brahm discussed this altercation.  Deputy

Roberts was not involved firsthand in the altercation Brahm describes, and "[t]he mere

investigation or adjudication of a grievance is insufficient to implicate an officer in the

underlying injury, as it does not demonstrate 'personal knowledge' or violate a constitutional

right for the purposes of § 1983."  *Higgs v. New Jersey Dep't of Corr.*, 2024 WL 3811985, at *2

(3d Cir. Aug. 14, 2024) (citing *Rode*, 845 F.2d at 1207).  In short, Brahm's conversation with

Deputy Roberts about Director Mulrooney's behavior does not implicate the former in the

latter's alleged retaliation.  Therefore, Brahm's retaliation claim against Deputy Roberts shall be

likewise dismissed without prejudice for failure to state a claim.

Finally, Brahm has failed to plead any facts suggesting that the allegedly retaliatory acts

taken against him by non-party correctional officers were "implementat[ions] or execut[ions]" of

a policy or custom of retaliation maintained by the County.  *See Monell*, 436 U.S. at 690-91.  His

conclusory and "[t]hreadbare recitals of the elements" of a municipal liability § 1983 claim—*i.e.*,

his bare allegations that a policy or custom of retaliation exists—are insufficient to state a claim

for relief.  *Iqbal*, 556 U.S. at 678 (explaining that a complaint which "tenders naked assertions

devoid of further factual enhancement" is insufficient to state a claim for relief (citations and

internal quotations omitted)).  Accordingly, Brahm's retaliation claim against the County shall be

dismissed without prejudice.  *See id.*

### ii.    *Right to Access Counsel*

Brahm brings § 1983 claims against the County and the Prison Defendants for denial of

his Sixth Amendment right to access counsel.  According to Brahm's Complaint, he was denied

all opportunities to meet with his criminal attorney, Scott C. McIntosh, during the first three

months of his incarceration.  Because of this delay, Brahm was unable to execute a document

granting McIntosh power of attorney over his belongings, which resulted in "loss, damage, and

injury to his home, cars, and his property . . . ."  Brahm also avers that, when he was finally

permitted to meet with McIntosh in February of 2022, the two were "forced to meet in the public

visitation room" in the presence of a correctional officer and to speak to one another through a

recorded phone line.  Further, on July 12, 2023, another of his attorneys, Anthony DiDonato, was

advised by a correctional officer that "he had to schedule a day and come back another time" to

meet with Brahm.  According to Brahm, these incidents constitute the workings of "blanket basis

policies and customs of interfering with attorney visits" at the Prison.

Without evaluating whether these facts amount to a denial of the right to access counsel,

Brahm's claims against the Prison Defendants falter because he has failed to plead, with

particularity, how any of the Prison Defendants were "personally involved" in the alleged

constitutional violations.  *See Rode*, 845 F.2d at 1207.  Brahm alleges simply that the Prison

Defendants "refused" to let him meet with his attorney without pleading any supportive facts

about which Prison Defendants did what and when.  These allegations amount to nothing more

than "[t]hreadbare recitals of the elements" of a civil rights claim.  *Iqbal*, 556 U.S. at 678.

Accordingly, Brahm's access to counsel claims against the Prison Defendants will be dismissed

for failure to state a claim.  *See id.* at 680-81 (rejecting, as insufficiently particularized to state a

claim, allegations that defendants "knew of, condoned, and willfully and maliciously agreed to"

violate plaintiff's rights).

Brahm's claim against the County must also be dismissed without prejudice for failure to state a claim.  His Complaint contains nothing more than the unadorned allegation that the County maintained a "blanket basis policy or custom" of denying attorney visits.  Without any additional facts pleaded in support, Brahm's claim cannot proceed beyond the screening process set forth in to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Iqbal*, 556 U.S. at 678.

### iii.    *Failure to Protect*

Finally, Brahm brings § 1983 claims for failure to protect against the County and the Prison Defendants, arguing that these Defendants' policies or customs of "provid[ing] inadequate training and understaffing" caused him to be struck in the nose by another inmate in early 2022 and to be verbally accosted by correctional officers.

Like his retaliation claims, these claims fail for lack of alleged personal involvement by any Prison Defendant or sufficient factual allegations regarding a County policy or custom of failing to protect inmates.  Brahm does not allege that any individual Defendant assaulted him, verbally accosted him, or failed to protect him from either of those harms.  Nor does he allege that any Defendant inadequately trained any specific correctional officer or made a decision not to hire additional officers who could have protected him from the injuries he alleges.  *Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." (citations omitted)).  Nor are his conclusory allegations that the County maintained a policy or custom of "provid[ing] inadequate training and understaffing" sufficiently fleshed-out to state a claim for relief.  *Iqbal*, 556 U.S. at 678.  Accordingly, these claims must be dismissed without prejudice.  *Id.*

16

## IV.    CONCLUSION

For the foregoing reasons, summary judgment will be entered in favor of all Defendants

on Brahm's claims for deliberate indifference to a serious medical condition.  The remainder of

Brahm's claims will be dismissed without prejudice for failure to state a claim.

An appropriate order follows.


**BY THE COURT:**

/s/Wendy Beetlestone, J.


_____

**WENDY BEETLESTONE, J.**